IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JANICE M. WATKINS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. CIV-04-1238-M |
| | ) |
| JO ANNE B. BARNHART, | ) |
| Commissioner, Social Security | ) |
| Administration, | ) |
| | ) |
| Defendant. | ) |

**REPORT AND RECOMMENDATION**

Janice Watkins ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405 (g) seeking judicial review of the Defendant Commissioner's final decision denying Plaintiff's application for disability insurance benefits under the Social Security Act. This matter has been referred to the undersigned Magistrate Judge for proceedings consistent with 28 U.S.C. § 636. Upon review of the pleadings, the record ("Tr.") and the parties' briefs, the undersigned recommends that the Commissioner's decision be reversed and the matter remanded for further proceedings.

**Administrative Proceedings**

Plaintiff initiated these proceedings in August, 2001, by filing a claim for disability insurance benefits [Tr. 51 - 53], alleging that heart arrhythmia and high blood pressure became disabling as of November 1, 2000 [Tr. 51 and 66]. Plaintiff's claim was denied initially and upon reconsideration [Tr. 28 - 31 and 34 - 35]; she subsequently sought and received a de novo hearing before an administrative law judge ("ALJ") who heard testimony from Plaintiff and a vocational expert ("VE") [Tr. 36 and 309 - 336]. In his

January, 2004 hearing decision, the ALJ found that Plaintiff could perform various jobs which were available in significant numbers in the national economy and, consequently, was not disabled within the meaning of the Social Security Act [Tr. 14 - 22].  The Appeals Council of the Social Security Administration declined Plaintiff's request for review, and Plaintiff subsequently sought review of the Commissioner's final decision in this court [Tr. 5 - 8].

**Standard of Review**

This court is limited in its review of the Commissioner's final decision to a determination of whether the ALJ's factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied.  *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003).  However, while this court can neither reweigh the evidence nor substitute its own judgment for that of the ALJ, the court's review is far from superficial.  "To find that the [Commissioner's] decision is supported by substantial evidence, there must be sufficient relevant evidence in the record that a reasonable person might deem adequate to support the ultimate conclusion."  *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir. 1988) (citation omitted).  "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it."  *Id.* at 299.

**Determination of Disability**

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be

expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). The Commissioner applies a five-step inquiry to determine whether a claimant is disabled. *See* 20 C.F.R. §§404.1520(b)-(f); *see also Williams v. Bowen*, 844 F.2d 748, 750-752 (10th Cir. 1988) (describing five steps in detail). Plaintiff bears the initial burden of proving that she has one or more severe impairments. 20 C.F.R. § 404.1512; *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). Where Plaintiff makes a prima facie showing that she can no longer engage in prior work activity, the burden of proof shifts to the Commissioner to show that Plaintiff retains the capacity to perform a different type of work and that such a specific type of job exists in the national economy. *Turner* , 754 F.2d at 328; *Channel v. Heckler*, 747 F.2d 577, 579 (10th Cir. 1984). In this case, the ALJ determined that Plaintiff could not perform her past work and continued the inquiry through the fifth step.

### **Plaintiff's Contentions**

It is Plaintiff's first claim of error that the ALJ failed to properly evaluate certain medical source opinions of record in connection with Plaintiff's alleged neck and back impairments. Second, Plaintiff asserts that the vocational evidence relied upon by the ALJ was flawed because the VE failed to accurately determine or enumerate the skills which were transferable from Plaintiff's past relevant work. Finally, the ALJ's credibility analysis is challenged. For the reasons which follow, the decision in this matter must be reversed because the ALJ failed to properly evaluate whether any skills acquired by Plaintiff in her past work were transferable to the work which he found appropriate for Plaintiff at the fifth step of the sequential process.

**Analysis of the ALJ's Decision**

The ALJ determined that Plaintiff – fifty years old with one year of college education and with past work experience as a restaurant hostess, a fast food worker, a home interiors worker, a food handler and a hotel/apartment custodial worker – was severely impaired by cardiac arrhythmia and coronary artery disease [Tr. 15 and 18]. Following a review of the medical evidence of record and an assessment of Plaintiff's credibility, the ALJ formulated Plaintiff's residual functional capacity ("RFC"), that is, work which she could still perform despite her limitations, and determined, based on that RFC and the expert vocational testimony of the VE, that Plaintiff could no longer perform her past work [Tr. 16 - 19].

Turning to the question of whether Plaintiff acquired skills in her past work which would be transferable to other potential jobs, the ALJ made the following finding: "She has more than a high school education and has transferable skills from skilled work previously performed. The undersigned concurs with the testimony of the vocational expert and finds the claimant has transferable skills." [Tr. 20]. Relying on the VE's response to the question of whether someone of Plaintiff's age, education, past work experience and RFC could make a vocational adjustment to other work, the ALJ found that Plaintiff could perform light work as a hostess, a decorator and a floral designer [Tr. 20]. Consequently, the ALJ found Plaintiff "not disabled" within the meaning of the Social Security Act. *Id.*

Both case law and Social Security Administration ruling mandate that "[w]hen an ALJ makes a finding that a claimant has transferable skills, he must identify the specific

skills actually acquired by the claimant and the specific occupations to which those skills are transferable." *Dikeman v. Halter,* 245 F.3d 1182, 1185 (10th Cir. 2001). *See also* Social Security Ruling 82-41, 1982 WL 31389, at *7 ("When a finding is made that a claimant has transferable skills, the acquired work skills must be identified, and specific occupations to which the acquired skills are transferable must be cited in the . . . ALJ's decision."). Plaintiff argues that the ALJ failed to make the requisite identification of her transferable skills; the Commissioner does not directly dispute this fact but maintains, instead, that "Plaintiff's hearing testimony provides substantial evidence documenting her transferable skills." [Doc. No. 15, Brief in Support of the Commissioner's Decision, page 7].

When asked by the ALJ at the outset of his hearing testimony to characterize Plaintiff's past work, the VE sought permission to question Plaintiff about her self-employment as a home interior displayer and decorator specialist,[1] stating that he was "curious about the skills and the job title that might have created." [Tr. 331]. The ALJ began the inquiry, and the VE followed up:

---

[1] Despite having been asked to describe her work history, Plaintiff's testimony up until this point had not included any reference to her self-employment as a home interior displayer and decorator specialist [Tr. 313 - 330]. The work history report filed in conjunction with Plaintiff's claim for benefits stated that she had been a "Decorator Specialist," working as an independent contractor from 1992 until 2001[Tr. 75]. In elaborating about the nature of this work, Plaintiff explained in her written filings:
> I make car calls, home visits. Organize books and paperwork. Unload freight. [ ]ack and bag merchandise. Made flower arrangements [and] swags. Gift to go wrapping. Delivered catalogues, mailing list, prepared my show case for any possible shows. Went in homes to hang pictures and accessories. Decorate clients home.

[Tr. 77 and 82].

5

CLMT   I was a home interior displayer part-time, and that was, I believe I started that in '92. And that's what I did, up until the time I worked at McDonald's. You know, it was part-time and the, you know, income did vary.

ALJ    How many hours a week would you work at that job, ma'am?

CLMT   Probably about six or seven.

ALJ    Okay. And what was the nature of the work, what was the job, what did you do?

CLMT   I gave out catalogs and I did in-home shows, up until about three years ago.

ALJ    All right.

CLMT   You know, when I got ill, when I got ill I stopped doing the in-home shows, because I had to, you know, load and unload the car and stuff.

ALJ    What type of items would you display at the shows?

CLMT   Pictures and shelves, candles.

ALJ    All right. Would you have to lift boxes of equipment and materials?

CLMT   Um-hum.

ALJ    All right, you have to say yes or no, I'm sorry.

CLMT   Yes, I'm sorry. Yes, sir.

ALJ    All right. Now how heavy would those boxes would be, would they be more than 20 pounds?

CLMT   Yes, sir.

ALJ    All right, Counsel - - I'm sorry, Dr. Bonner.

VE      Was there training from somewhere, because you listed this as decorator specialist. Did you have some training to be a decorator in addition to just merchandising gifts?

CLMT      Yes, we had to go through training. And that was, I began doing that in '92, and that was the training that I had then. And when I wasn't able to do it, when I stopped doing it in like '99, 2000, my daughters and my sons would come over and help me pack and unload, and like I said I had to stop doing shows. I was able to do catalog shows, and that's where the people would, you know, I would give them the books and they would take the orders and they would come pick up their merchandise once it got ordered, and so - -

VE      All right. Okay, I think that helps me, Your Honor.

[Tr. 331 - 333].

Plaintiff's testimony also produced information about her most recent employment – from May until June, 2001[2] – in a restaurant:

ALJ      How many - - what kind of work was it and how much work did you do?

CLMT      I worked for four hours a day basically, and I cleaned tables, mopped the floors, swept.

ALJ      All right. And what type of establishment did you do the work in, was it a restaurant?

---

[2] Plaintiff's written work history report showed her job title as "Hostess" for a restaurant [Tr. 75]. In describing her job at the restaurant, a McDonald's, Plaintiff wrote that "I greeted customers, washed tables and chairs, Baseboards, counter tops[;] filled condiment containers (napkins, catsup etc.) [;] washed trays & walls [and] highchairs as needed[;] clean any dirty area in lobby[;] sweep[,] mop, clean bathrooms [Tr. 76].

CLMT   McDonald's restaurant.

ALJ   Okay.

CLMT   Yes.

ALJ   All right. And how much were you paid to do that work, ma'am?

CLMT   $5.25.

ALJ   All right. So Counsel, you're characterizing this as work, but it was temporary work and it didn't rise to SGA levels, is that correct?

ATTY   That's the way we look at it. I think she last did it in June of 2001, I'm not really sure length-wise.

CLMT   I only worked one month. I worked about a month or six weeks I worked, because I wasn't able to handle the work.

* * *

ATTY   Now, what kind of problems have you been having, or like for the McDonald's job, why did you have to stop that job, what happened?

CLMT   During the rush hour there wasn't enough - - I couldn't handle the workload, because I was constantly cleaning off tables, having to, you know, pull chairs out, mop the floor, pick up spills. And it was just too strenuous, I got fatigued easily and I had to sit down, you know, during that time about every hour.

[Tr. 312 - 314].

The VE characterized Plaintiff's past work as follows:

| | |
|---|---|
| VE | The way I understand the record from 1978 to 1995, Ms. Watkins worked in a custodial position at Fort [Sill] working with their billeting. And I would consider that heavy work and unskilled, at SVP 2 under custodial. |
| ALJ | All right. |
| VE | I'm a little unclear still on the '99, but from 2000 - - well from '92 to 2001, there was a part-time position of home interior gifts, and I'm going to call it decorator specialist. The decorator part of the work is light and skilled, at SVP 7, and the actual merchandising is medium and semi-skilled. Then in '99 and 2000, Ms. Watkins worked as a food handler at Good Year, in the written record at least. And again this was part-time work at the same time the part-time was being done a decorator specialist. And I would classify that work as light, and semi-skilled, at SVP 3. Then in 2001, the hostess job at McDonald's, I would classify light, and semi-skilled, at SVP 3, as just hostess any industry. |
| ALJ | All right. The first hypothetical I want you to consider, assumes the vocational factors of an individual who is a little more, is about 50 ½ years of age at the date of hearing, who has accomplished a 12th grade education, plus college classes. And who possesses the strength to perform a wide range of light work. However that would be only occasional stooping, kneeling, and crouching. In addition, the hypothetical individual - - well let's stop there. Given these limitations, would any past work be available? |
| VE | No, sir. |

ALJ    Would any work be available, that would take advantage of the claimant's transferable skills?

VE    Yes, sir.

ALJ    What would that be, sir?

VE    Hostess, any industry, other than McDonald's. My rationale for that, the testimony included cleaning that would have stooping and crouching at McDonald's.

ALJ    All right.

VE    But at many places, the hostess does not have to do the cleaning work. So hostess, any industry, is L, SVP 3. . . .  Then with three years of part-time work as a decorator specialist, not doing the home interior gifts part of the business, that would qualify a hypothetical worker to do two different kinds of decorating work. One would be just decorator, that's considered light, and skilled, at SVP 7, . . . Then the other title would be floral designer, light, and skilled. At SVP 6. . . .

[Tr. 333 - 334].

As is clear from the foregoing testimony, at no point does the VE articulate the skills which be believes that Plaintiff acquired from her past work in home show sales or at McDonald's nor does the ALJ request an affirmation and identification of any such skills [Tr. 330 - 335]. Moreover, the ALJ makes no reference to particular skills in the hearing record or in his written decision, stating instead that Plaintiff "has transferable skills from skilled work previously performed [and] [t]he undersigned concurs with the testimony of the vocational expert and finds the claimant has transferable skills." [Tr. 20 and 330 - 335]. And, contrary to the Commissioner's argument, Plaintiff's testimony

about the "skills" she acquired as a home interior displayer and decorator specialist – gave out catalogs; did in-home shows; loaded and unloaded the car; displayed pictures, shelves and candles; lifted boxes of equipment and materials weighing more than twenty pounds; underwent training for her work – does not provide "substantial evidence documenting her transferable skills." [Doc. No. 15, page 7].  At best, Plaintiff's testimony establishes that she had some experience with in-home show sales, for which she received some training – the amount and nature of which is unknown on judicial review as neither the ALJ nor the VE made inquiry of the Plaintiff – and that she displayed pictures, shelves and candles.

Such meager evidence cannot support the ALJ's determination that these "skills" could be used by Plaintiff to meet the requirements of skilled work as a decorator or a floral designer, two of the three jobs for which the VE, and, in turn, the ALJ, found Plaintiff was suited [Tr. 20 and 334].  The undersigned has searched the *Dictionary of Occupational Titles* ("DOT") and has found two positions which match the VE's criterion of a specific vocational preparation ("SVP") of 7,[3] *see* DOT, App. C[4], and which relate to the work of a decorator or interior designer.  The first position is designated as decorator, any industry, 298.381-010, and is described as follows:

> Prepares and installs decorations and displays from blueprints or drawings for trade and industrial shows, expositions, festivals, and other special events: Cuts out designs on cardboard, hard board, and plywood, according to motif of event. Constructs portable installations according to

---

[3]*See* Social Security Ruling 00-4p, 2000 WL 1898704, at *3 ("Using the skill level definitions in 20 CFR 404.1568 and 416.968, unskilled work corresponds to an SVP of 1-2; semi-skilled work corresponds to an SVP of 3-4; and skilled work corresponds to an SVP of 5-9 in the DOT.")

[4]http://www.occupationalinfo.org/appendxc_1.html.

11

> specifications, using woodworking power tools. Installs booths, exhibits, displays, carpets, and drapes, as guided by floor plan of building. Arranges installations, furniture, and other accessories in position shown in prepared sketch. Installs decorations, such as flags, banners, festive lights, and bunting, on or in building, street, exhibit halls, and booths, to achieve special effects [DECORATOR, STREET AND BUILDING (any industry)]. Assembles and installs prefabricated parts to reconstruct traveling exhibits from sketch submitted by client, using handtools.[5]

The second position is designated as interior designer, 142.051-014, and is described in the following manner:

> Plans, designs, and furnishes interior environments of residential, commercial, and industrial buildings: Confers with client to determine architectural preferences, purpose and function of environment, budget, types of construction, equipment to be installed, and other factors which affect planning interior environments. Integrates findings with knowledge of interior design and formulates environmental plan to be practical, esthetic, and conducive to intended purposes, such as raising productivity, selling merchandise, or improving life style of occupants. Advises client on interior design factors, such as space planning, layout and utilization of furnishings and equipment, color schemes, and color coordination. Renders design ideas in form of paste ups, drawings, or illustrations, estimates material requirements and costs, and presents design to client for approval. Selects or designs and purchases furnishings, art works, and accessories. Subcontracts fabrication, installation, and arrangement of carpeting, fixtures, accessories, draperies, paint and wall coverings, art work, furniture, and related items. May plan and design interior environments for boats, planes, buses, trains, and other enclosed spaces. May specialize in particular field, style, or phase of interior design. May specialize in decorative aspects of interior design and be designated Interior Decorator (profess. & kin.).[6]

The floral designer position to which the ALJ found Plaintiff could make a vocational adjustment is coded as 142.081-010 and is described as follows:

---

[5]http://www.occupationalinfo.org/29/298381010.html.

[6]http://www.occupationalinfo.org/14/142051014.html.

> Designs and fashions live, cut, dried, and artificial floral and foliar arrangements for events, such as holidays, anniversaries, weddings, balls, and funerals: Confers with client regarding price and type of arrangement desired. Plans arrangement according to client's requirements and costs, utilizing knowledge of design and properties of materials, or selects appropriate standard design pattern. Selects flora and foliage necessary for arrangement. Trims material and arranges bouquets, sprays, wreaths, dish gardens, terrariums, and other items, using wire, pins, floral tape, foam, trimmers, cutters, shapers, and other materials and tools. May decorate buildings, halls, churches, or other facilities where events are planned. May pack and wrap completed arrangements. May estimate costs and price arrangements. May conduct classes or demonstrations. May instruct and direct other workers. May arrange according to standard designs or under instruction of designer and be designated Floral Arranger (retail trade).

Plaintiff's testimony describing the work she undertook in home show sales does not constitute substantial evidence that she acquired transferable skills which would enable her to perform the above-described work as a decorator or as a floral designer. There is no evidence with regard to the scope of Plaintiff's work as a decorator and whether it extended beyond setting up attractive displays of the home interior products offered for sale. Likewise, there is a total absence of evidence concerning Plaintiff's skills as a floral designer. Her written filings stated that she "[m]ade flower arrangements [and] swags" [Tr. 77] in conjunction with the home show sales, but neither the VE nor the ALJ inquired about the extent of Plaintiff's skills and experience in this endeavor. Moreover, a review of the DOT reveals that Plaintiff's work in home show sales would likely be categorized as a salesperson-demonstrator, party plan, 279.357-038, a job performed at the light exertional level with an SVP of 4, that is, semi-skilled work. The work is described as follows:

> Displays and sells merchandise, such as clothes, household items, jewelry, toiletries, or toys, to guests attending house party: Confers with party

> sponsor to arrange date, time, and number of guests. Sets up display of sample merchandise. Meets guests and converses with them to establish rapport. Discusses items on display or demonstrates uses of product, and explains program to guests. Hands out catalogs or brochures that picture merchandise available. Writes orders for merchandise and arranges for payment. Delivers orders to sponsor or individual and collects monies due. May give small sample items to guests. May discuss program with guests to persuade them to sponsor house party by describing benefits derived from sponsorship. May assist sponsor to serve refreshments.[7]

Skills acquired by a claimant in this work – a semi-skilled job – would not be transferable to skilled work such as a decorator or floral designer but only to a job requiring the same degree of skill. *See* Social Security Ruling 82-41, 1982 WL 31389, at *5; Social Security Ruling 00-4p, 2000 WL 1898701, at *3.

The determination by the VE and the ALJ that Plaintiff's work as a McDonald's "hostess" vested her with skills which would transfer to work as a hostess, any industry, also fails to find substantial support in the record. Apart from the fact that Plaintiff only worked in this position four hours a day for, at most, six weeks – less than the amount of lapsed time required to develop the ability to perform a semi-skilled job[8] – Plaintiff's description of the job hardly equates with the description found in the DOT of host/hostess (any industry), coded as 352.667-010, with an SVP of 3:

> Greets guests arriving at country club, catered social function, or other gathering place. Introduces guests and suggests planned activities, such as dancing or games. Gives directions to personnel engaged in serving of refreshments. May plan menus and supervise activities of food-service workers. May plan and participate in social activities, games, and sports,

---

[7] http://www.occupationalinfo.org/27/279357038.html.

[8] *See* DOT, App. C., Specific Vocational Preparation; http://www.occupationalinfo.org/appendxc_1.html#II.

> depending on nature of establishment or function. May deposit or pick up guests at railway station, home, or other location as directed.[9]

Plaintiff did indicate in her written filings that she greeted McDonald's patrons but this function is the only common denominator between the plainly unskilled, cleaning work Plaintiff did at McDonald's and the work which the VE and ALJ found she was capable of performing based upon the "skills" she acquired during her tenure at McDonald's.

For the reason that the ALJ failed to identify any transferable skills acquired by Plaintiff in her past work and because, contrary to the Commissioner's claim, Plaintiff's testimony fails to provide substantial evidence of any transferable skills, substantial evidence does not support the ALJ's nondisability determination at step five and the ALJ's decision must be reversed and the matter remanded for further proceedings.  Because remand is required on this ground, it is not necessary to reach the remaining issues raised by Plaintiff.[10]

## **RECOMMENDATION**

For the foregoing reasons, it is recommended that the Commissioner's final decision be reversed and the matter remanded for further proceedings.  The parties are advised of their right to object to this Report and Recommendation by August 16, 2005, in accordance with 28 U.S.C. §636 and Local Civil Rule 72.1.  The parties are further advised that failure to make timely objection to this Report and Recommendation waives

---

[9] http://www.occupationalinfo.org/35/352667010.html.

[10] In this connection, it is worth noting that the ALJ's responsibility to weigh medical source opinions extends to the opinions of an examining physician.  *See Lackey v. Barnhart,* 127 Fed. Appx. 455, 457 (10th Cir. Apr. 5, 2005) (unpublished op. cited as persuasive authority pursuant to Tenth Circuit Rule 36.3).

their right to appellate review of both factual and legal issues contained herein.  *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).   This Report and Recommendation disposes of all issues referred to the Magistrate Judge in this matter.

ENTERED this 27th day of July, 2005.

_____
BANA ROBERTS
UNITED STATES MAGISTRATE JUDGE